# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class ALEX R. GOSS
### United States Air Force

### ACM 38805

### 7 September 2016

Sentence adjudged 10 February 2015 by GCM convened at Edwards Air Force Base, California. Military Judge: Brendon K. Tukey (sitting alone).

Approved sentence: Bad-conduct discharge, confinement for 100 days, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Major Isaac C. Kennen.

Appellate Counsel for the United States: Lieutenant Colonel Nurit Anderson and Gerald R. Bruce, Esquire.

Before

DUBRISKE, SANTORO, and SPERANZA
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge at a general court-martial convicted Appellant, pursuant to his plea, of grabbing the buttocks of a person he knew or reasonably should have known was unconscious, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence was a bad-conduct discharge, confinement for 100 days, forfeiture of

all pay and allowances, and reduction to E-1.[1]  Appellant asserts that his due process rights were violated when the convening authority considered information submitted by the victim's counsel pursuant to Article 60(d), UCMJ, 10 U.S.C. § 860(d), and Rule for Courts-Martial (R.C.M.) 1107(b)(3)(B)(iii).  We disagree and affirm.

*Background*

On 31 December 2013, Appellant attended a New Year's party at the off-base residence of several Airmen.  Approximately 40 people attended, including the victim, who was the civilian girlfriend of one of the Airmen living at the house.  The New Year's party was the first time Appellant met the victim and they had little to no interaction during the party.

The victim consumed a significant quantity of alcohol and eventually went to her boyfriend's bedroom to retire for the night.  At some point later, Appellant walked into the bedroom by mistake while looking for a restroom.  He saw the victim lying unconscious on the bed.  Appellant sat on the bed, reached his hand under the victim's dress, grabbed her buttocks, and began to masturbate.  The victim remained unconscious during the entire event.  The incident ended when the victim's boyfriend entered the room, confronted Appellant, and forcibly removed him from the bedroom.

Additional facts necessary to resolve the assignment of error are included below.

*Victim Impact Statement*

The victim of an offense tried by court-martial that results in a conviction has the right to submit matters for the convening authority's consideration before action is taken on the findings and sentence.  Article 60(d), UCMJ, 10 U.S.C. § 860(d); *see also* R.C.M. 1105A.  Before taking action, the convening authority may consider "[s]uch other matters as the convening authority deems appropriate.  However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut."  R.C.M. 1107(b)(3)(B)(iii).

During post-trial processing and pursuant to R.C.M. 1106, the staff judge advocate (SJA) submitted a recommendation (SJAR) to the convening authority that he approve the findings and sentence as adjudged.[2]  Two weeks later, the SJA submitted an addendum to

---

[1] A specification alleging that Appellant penetrated the same victim's vulva with his penis while she was unconscious was withdrawn pursuant to the terms of a pre-trial agreement that limited Appellant's period of confinement to 24 months.  The military judge dismissed a charge and specification in violation of Article 134, UCMJ, 10 U.S.C. § 934, alleging Appellant masturbated above the same victim's unconscious body.

[2] In our review of this case, we note that the staff judge advocate (SJA) erroneously advised the convening authority that the maximum period of confinement for the offense of which Appellant was found guilty was 37 years when in

his initial recommendation. The addendum included three additional matters: one signed letter from the victim and two letters from her counsel. The three letters urged the convening authority not to mitigate the adjudged sentence. The SJA did not comment on the contents of any of the attachments to the addendum and said only that the previous recommendation remained unchanged. This addendum was served on Appellant and his trial defense counsel.

Trial defense counsel submitted both a clemency request and a response to the matters contained in the addendum. Nowhere in the response to the addendum did trial defense counsel challenge the propriety of the convening authority's considering the matters submitted by the victim or her counsel. Instead, trial defense counsel squarely addressed the comments made by both the victim and her counsel and offered Appellant's contrary view of the assertions. Trial defense counsel encouraged the convening authority to consider the arguments and "give this submission from [the victim] through her counsel *the appropriate amount of weight*" (emphasis added). The convening authority declined to grant the requested clemency and approved the sentence as adjudged.

Appellant now argues that the convening authority violated due process by considering the victim's statement because, when requesting that the sentence be approved as adjudged, the victim stated that Appellant had not offered an explanation of how her DNA was found on him after the assault.[3] Appellant also asserts that it was error for the convening authority to consider the victim's written statement when the military judge had declined to consider it because neither the victim nor her counsel personally appeared at the court-martial.

Proper completion of post-trial processing is a question of law which we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in the SJAR, or on matters attached to the SJAR, forfeits any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). To prevail under a plain error analysis, Appellant bears the burden of showing the following: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

---

fact it was 7 years. Appellant did not raise this issue either before the convening authority or before us, and, after our review of the entire record, we are convinced that this error was harmless.

[3] In context, this statement appears to express the victim's concern that Appellant may have engaged in conduct more egregious than that reflected by the guilty plea. The victim also stated that she had no recollection of that night. Other than a question about the significance of the DNA evidence, the victim had no other apparent basis on which to suspect something more had occurred. The DNA evidence was included in the stipulation of fact that accompanied Appellant's guilty plea and, therefore, was already appropriately before the convening authority.

The parties disagree as to whether Appellant has forfeited this alleged error. Appellant argues that his efforts to rebut the victim's statements, while never explicitly challenging their authenticity or the propriety of convening authority considering them, was sufficient under R.C.M. 1106(f)(6) to preserve the error. The Government argues that R.C.M. 1106 requires an actual objection to the matters before the convening authority and, that in this case, because Appellant responded directly to the questions and issues raised by the victim and her counsel, he cannot now claim error.

We conclude that Appellant's failure to challenge the victim impact statements' *authenticity* has forfeited that issue absent plain error. Although we are doubtful that Appellant's specific rebuttal of the *substance* of the victim impact statements has preserved that issue for review, we conclude that there was no error, plain or otherwise.

Shortly before Appellant's trial, Article 60, UCMJ, was amended to include a new subsection "(d)" that authorized the submission of victim impact statements. *See* National Defense Authorization Act (NDAA) for Fiscal Year 2014, Pub. L. No. 113-66, § 1706, 127 Stat. 672, 960-61 (2013). However, the amended Article 60, UCMJ, does not address what may be included in a victim impact statement:

> In any case in which findings and sentence have been adjudged for an offense that involved a victim, the victim shall be provided an opportunity to submit matters for consideration by the convening authority or by another person authorized to act under this section before the convening authority or such other person takes action under this section.

Article 60(d)(1), UCMJ; *see also* R.C.M. 1105A.

The amendment to Article 60, UCMJ, did not change the standard a convening authority uses when reviewing the findings and sentence. The convening authority may consider "[s]uch other matters as the convening authority deems appropriate." R.C.M. 1107(b)(3)(B)(iii). In addition, the Military Rules of Evidence—including those of authenticity and relevance—do not apply to the convening authority when taking action in a case. The procedural protection the President established to protect the very due process rights Appellant asserts in this case are the requirement for SJA review and recommendation (R.C.M. 1106), Appellant's ability to comment on that review and recommendation (R.C.M. 1105), and Appellant's ability to rebut adverse information from outside the record (R.C.M. 1107(b)(3)(B)(iii)).[4]

---

[4] The federal civilian cases cited by Appellant in support of his due process argument are inapposite to the issue raised in this case as there is no equivalent clemency process in United States District Court before a judgment becomes final.

"Congress gave the convening authority the important, quasi-judicial power to review the judgment and sentence of a court-martial. When the convening authority goes outside the record, under the Rules for Courts-Martial, he or she must disclose this to an accused and give the accused an opportunity to respond." *United States v. Cornwell*, 49 M.J. 491, 494 (C.A.A.F. 1998) (Sullivan, J., dissenting). An SJA may not provide a convening authority with information known to be unreliable or misleading. *United States v. Mann*, 22 M.J. 279, 280 n.2 (C.M.A. 1986). Therefore, SJAs and their staff should remain vigilant, particularly when reviewing materials submitted by victims who may still be emotional and justifiably biased. Victims and their advocates may not understand the issues that can be created when the post-trial process goes awry. Thus, a prudent SJA may decide to supplement the advice contained in an SJAR—depending on the content of a victim impact statement—or take other action to prevent a recently-convicted Airman from being unfairly prejudiced during the clemency phase.[5]

However, in this case, the SJA did not err in providing matters submitted by the victim and her counsel to the convening authority. Although Appellant, in passing, questions the statements' authenticity, this issue was forfeited and we see nothing in the record causing us to question them. In accordance with R.C.M. 1107(b)(3)(B)(iii), Appellant and his trial defense counsel were served with copies of the statements and responded with a full-throated rebuttal. Trial defense counsel did not raise legal error within the meaning of R.C.M 1105(b)(2)(A). Instead, trial defense counsel made fact-based arguments and never argued that there was a legal error. The SJA was not required to respond to legal error where none was asserted. We, therefore, find no error, plain or otherwise.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[5] In offering this suggestion, we also note that the SJA's Rule for Courts-Martial (R.C.M.) 1106 obligation to comment on allegations of legal error does not extend to submissions by victims. The SJA is obligated to "state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in *matters submitted under R.C.M. 1105* or when otherwise deemed appropriate by the staff judge advocate." R.C.M. 1106(d)(4) (emphasis added). "The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required." *Id.*